UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                      |   |                                  |
|--------------------------------------|---|----------------------------------|
| DAVID KEANU SAI, Ph.D., *pro se*     | ) |                                  |
|                                      | ) |                                  |
| Plaintiff,                           | ) |                                  |
|                                      | ) |                                  |
| v.                                   | ) | Civil Action No. 18-cv-1500 (TSC) |
|                                      | ) |                                  |
| DONALD J. TRUMP, *et al.*            | ) |                                  |
|                                      | ) |                                  |
| Defendants.                          | ) |                                  |

## **MEMORANDUM OPINION**

Before the court is David Keanu Sai's *pro se* Petition against Donald J. Trump, President of the United States of America; Philip S. Davidson, Commander of the Indo-Pacific Command of the United States Navy; and David Ige, Governor of the State of Hawaii. Sai describes himself as the "Chairman of the acting Council of Regency" representing the Hawaiian Kingdom as a sovereign and body politic." Petition ¶ 16. He alleges that the United States committed War Crimes, 18 U.S.C. § 2441, as well as acted in derogation of the Hague Convention, the Geneva Convention, and "international humanitarian laws," when it "invaded Hawaii" in 1893 and subsequently made the island a part of the U.S. *See*, *e.g.*, Petition ¶¶ 5, 8, 79-92, 169-205. Citing the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the All Writs Act, 28 U.S.C. § 1651(a), Sai asks this court to enjoin the President from continuing any actions with respect to Hawaii that allegedly violate these laws.

Sai also names roughly thirty-four heads of state, leaders of the United Nations, and the Chairperson of the Administrative Council of the Permanent Court of Arbitration as "Nominal Respondents. . . not 'because any specific relief is demanded as against [them], but because

[their] connection with the subject-matter is such that the [Petitioner's] actions would be defective . . . if [they] were not joined.'" Petition ¶ 14 (internal quotations and alterations in the original). Sai appears to contend that these foreign officials, entities and bodies failed to remain neutral with respect to U.S. and Hawaii relations, thereby becoming parties to the "war" between the United States and Hawaii and, consequently, violating both the Hague and Geneva Conventions. *See id.* ¶¶ 16, 18, 109.[1]

For the reasons set forth below, the court will dismiss Sai's Petition *sua sponte*.

## I.  ANALYSIS

### A.  The All Writs Act

The All Writs Act, in relevant part, states that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. However, a court must first determine if it has jurisdiction to issue a writ of mandamus. *See In re Asemani*, 455 F.3d 296, 299 (D.C. Cir. 2006) ("Before considering whether mandamus relief is appropriate, . . . we must be certain of our jurisdiction."). "In other words, there must be an 'independent' statute that grants us jurisdiction before mandamus can be said to 'aid' it." *In re Al-Nashiri*, 791 F.3d 71, 76 (D.C. Cir. 2015). As discussed below, Sai has not cited to a statute that grants this court jurisdiction to hear his claims. Accordingly, he cannot proceed under the All Writs Act.

### B.  18 U.S.C. § 2441

Sai seeks relief against Defendants pursuant to 18 U.S.C. § 2441, which criminalizes various war crimes. But "[c]ourts are 'quite reluctant to infer a private right of action from a

---

[1] Because the court is dispensing with Sai's claims on other grounds, the court need not address whether there is legal authority to bring claims against the international leaders.

criminal prohibition alone.'" *Peavey v. Holder*, 657 F. Supp. 2d 180, 190–91 (D.D.C. 2009), *aff'd*, No. 09-5389, 2010 WL 3155823 (D.C. Cir. Aug. 9, 2010) (alterations omitted) (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 190 (1994)). Accordingly, "unless a specific statute provides for a private right of action, courts have found that violations of Title 18 are properly brought by the United States government through criminal proceedings and not by individuals in a civil action." *Hallal v. Mardel*, No. 116CV01432DADSAB, 2016 WL 6494411, at *3 (E.D. Cal. Nov. 2, 2016) (citing *Abou–Hussein v. Gates*, 657 F. Supp. 2d 77, 79 (D.D.C. 2009); *Prunte v. Universal Music Grp*., 484 F. Supp. 2d 32, 42 (D.D.C. 2007); *Smith v. Gerber*, 64 F. Supp. 2d 784, 787 (N.D. Ill. 1999)).

Moreover, at least one other court has held that Section 2441 does not create a private cause of action, *Jawad v. Gates*, 113 F. Supp. 3d 251, 259 (D.D.C. 2015), and Sai has not cited to any provision of Title 18 which would authorize such an action under Section 2441. Accordingly, the court will dismiss Sai's Section 2441 claim.

**C. Hague Convention and Geneva Convention**

"[T]he Geneva Convention does not [generally] create a right of action for private individuals to enforce its terms." *Nattah v. Bush*, 770 F. Supp. 2d 193, 204 (D.D.C 2011) (citing *Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, 808 (D.C. Cir. 1984). While the Supreme Court in *Hamdan v. Rumsfeld,* 548 U.S. 557 (2006) held that the Geneva Convention can provide prisoners of war with a claim against the government in a petition for *habeas corpus*, *Nattah v. Bush*, 541 F. Supp. 2d 223, 233 (D.D.C. 2008), *rev'd in part on other grounds* 605 F.3d 1052 (D.C. Cir. 2010), that ruling is inapplicable to Sai's claims here.

Likewise, the Hague Convention does not afford relief for private individuals. *Nattah*, 770 F. Supp. 2d at 206 ("The Hague Conventions cannot be construed to afford individuals the

right to judicial enforcement as they have never been regarded as law private parties could enforce.") (alterations and internal quotation marks omitted) (citing *Tel–Oren,* 726 F.2d at 810). Therefore, Sai may not seek relief under the Hague or the Geneva Conventions.

**D. Political Question Doctrine**

The political question doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). "The principle that the courts lack jurisdiction over political questions that are by their nature 'committed to the political branches to the exclusion of the judiciary' is as old as the fundamental principle of judicial review." *Schneider v. Kissinger,* 412 F.3d 190, 193 (D.C. Cir. 2005) (citation omitted).

Relying on this principle, another judge on this court dismissed a similar lawsuit Sai filed against then Secretary of State, Hillary Clinton and other US officials. *Sai v. Clinton*, 778 F. Supp. 2d 1, 6 (D.D.C. 2011) (hereinafter "*Sai I*"). Although Sai relied on different legal theories in that lawsuit, his purpose there was the same as his purpose here: to challenge the United States' recognition of the "Republic of Hawaii as a sovereign entity" and its "exercise of authority over Hawaii following annexation." *Id.* at 6–7. Given this purpose, the court found that it did not have jurisdiction to review the case because the Constitution commits foreign relations authority to the executive and legislative branches. *Id.* at 7 (citing *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918)); *see* U.S. Const., Art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States. . . ."). The Court of Appeals affirmed, finding that

"[t]he merits of the parties' positions [were] so clear as to warrant summary action." *Sai v. Obama*, No. 11-5142, 2011 WL 4917030 (D.C. Cir. Sept. 26, 2011).

Sai attempts to preemptively address the political question obstacle by asserting in his Petition that numerous courts, including the court in *Sai I,* mistakenly deferred to Congress rather than the Executive in determining that issues of sovereignty prevent district court review. *Id*. ¶¶ 237-239. He argues that the Executive branch recognized Hawaii's sovereignty in 1893 when President Cleveland delivered a message to Congress denouncing the role of American forces in the Hawaiian Islands and calling for the restoration of the Hawaiian monarchy. *Id*. ¶ 237; *see Sai I*, 778 F. Supp. 2d at 4 (citing House Ex. Doc. 47, 53d Cong., 2d Sess. (Ser. No. 3224), pp. 3–16 (1893)). Sai argues that given President Cleveland's actions, the current President, as the "successor," has also acknowledged Hawaii's independence and sovereignty.

This argument fails for several reasons. First, the dismissal in *Sai I* was not based solely on deferral to the legislative branch. Instead, the court repeatedly explained that determinations of sovereignty are not judicial functions, but instead rest with the executive <u>and</u> the legislative branches of government. *Sai I*, 778 F. Supp. 2d at 6-7.

Second, Sai's argument fails to acknowledge the realities of U.S. history. After President Cleveland's denouncement, U.S. officials later condoned the actions of the U.S. forces in the islands, the Hawaiian monarchy was dethroned, and President McKinley signed a Joint Resolution to annex the Hawaiian Islands as a territory of the United States in 1898. *Sai I*, 778 F. Supp. 2d at 4. Hawaii became a state in 1959 and remains so today. *Id*. Thus, Sai's argument that the Executive branch of government recognizes Hawaii as a sovereign state is baseless.

Third, *Sai* unsuccessfully raised a similar argument in his *Sai I* appellate brief. *See Sai v. Obama*, 11-5142, 8/8/2011, Pls. Resp. pp. 8-9 ("[T]he political question doctrine cannot be

invoked whereby the Executive already afforded recognition of a foreign state and its government . . . Once the executive afforded recognition of Hawaii's sovereignty, the recognizing state, which includes this Court, the Congress and all successor Executives, is estopped from contesting its validity at any future time."). He cannot relitigate this issue here.

Finally, Sai argues that *Sai I* was incorrectly decided because Congress does not have the authority to "annex territory of a foreign state. . . by domestic legislation alone." Petition ¶ 241. Sai raised this same argument in his appellate brief, to no avail. *See Sai v. Obama*, 11-5142, 8/8/2011, Pls. Resp. p. 11 ("Therefore, the District Court was able to 'determine that the annexation of Hawaii by the United States was unlawful and void,' because not only is Congressional legislation limited and confined to territory of the United States, it is in direct violation of . . . a [Hawaiian] treaty, that mandates the U.S. Executive to administer and execute Hawaiian Kingdom law until the Hawaiian government is restored . . ."). This is not the appropriate forum in which to challenge the Court of Appeals' decision against him, and this court therefore lacks jurisdiction to hear Sai's claims.

**E.     APA**

Sai's attempt to proceed under the APA also fails. The APA does not provide relief against the Executive or governments of the territories or possessions of the United States. *See* 5 *Franklin v. Massachusetts*, 505 U.S. 788, 800–1 (1992) (citing 5 U.S.C. §§ 701(b)(1), 551(1)).[2]

---

[2] "The APA defines an "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include--
    (A)    the Congress;
    (B)    the courts of the United States;
    (C)    the governments of the territories or possessions of the United States;
    (D)    the government of the District of Columbia;
    (E)    agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;
    (F)    courts martial and military commissions;

Moreover, with respect to federal agencies, "[t]he APA specifically provides that its judicial review provision does not affect 'the power or duty of the court to dismiss any action or deny relief on any. . . appropriate legal or equitable ground.'" *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 (D.C. Cir. 1985) (citing 5 U.S.C. § 702) (alterations in the original). In light of this court's finding that Sai's Petition poses a political question, he may not bring a claim under the APA.

## II. CONCLUSION

Because Sai's claims involve a political question, this court is without jurisdiction to review his claims and the court will therefore DISMISS the Petition.

Date: September 11, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

  (G) military authority exercised in the field in time of war or in occupied territory; . . . .

5 U.S.C. § 7701(b)(1)